1  Robert K. Sall (Bar No. 83782)
   rsall@sallspencer.com
2  Lara A.S. Callas (Bar No. 174260)
   lcallas@sallspencer.com
3  SALL SPENCER CALLAS & KRUEGER, ALC
   32351 Coast Highway
4  Laguna Beach, CA 92651
   Tel: 949-499-2942
5

6  Attorneys for Plaintiffs

7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                      EUREKA DIVISION

11

12  ROCKHILL CONSULTING GROUP, LLC, a        Case No.:
    Delaware limited liability company; DANIEL
13  KOETTING, an individual,                 **COMPLAINT FOR:**
                                             **(1) LEGAL MALPRACTICE**
14                            Plaintiffs,    **(2) BREACH OF FIDUCIARY DUTY; AND**
                                             **(3) BREACH OF CONTRACT**
15  v.
                                             **DEMAND FOR JURY TRIAL**
16  BRADLEY ARANT BOULT CUMMINGS
    LLP, an Alabama limited liability partnership, S.
17  DAVID SMITH, an individual,

                              Defendants.
18

19

20        Plaintiffs ROCKHILL CONSULTING GROUP, LLC, a Delaware Limited Liability Company

21  located in California ("Rockhill") and DANIEL R. KOETTING, an individual, ("Dan")[1](collectively,

22  "Plaintiffs") by and through their attorneys, Sall Spencer Callas & Krueger, ALC, hereby allege as

23  follows:

24

25

26  _____

27  [1] Because this Complaint also refers to Dan's brother, Mark Koetting, we use their first names to
28  distinguish between the brothers.

                                        1
                                  **COMPLAINT**

## JURISDICTION AND VENUE

1.      The jurisdiction of this Court is invoked under the Diversity of Citizenship provisions of Title 28 U.S.C. Section 1332. Plaintiffs and Defendants are citizens of different states.  The matter in controversy exceeds, exclusive of interest and costs, the sum or value of seventy-five thousand ($75,000.00) dollars

2.      Venue lies in this Court under Title 28 U. S.C. Section 1391(b) (2) as a substantial part of the events or omissions giving rise to the claims occurred in this District.

## INTRODUCTION

3.      This action for legal malpractice and breach of fiduciary duty arises out the representation of Plaintiffs by Defendant Bradley Arant Boult Cummings LLP ("BABC") in an arbitration in 2018.  Defendant S. David Smith, also known as Sam David Smith ("Smith"), is an individual who was at all relevant times a partner or attorney employed by BABC who worked extensively as the lead counsel on the representation of Plaintiffs herein alleged. BABC and Smith are referred to collectively as "Defendants."  As a result of Defendants' negligence and breaches of duties, the arbitration resulted in a highly unfavorable outcome for Plaintiffs.   Due to Defendants' misconduct, Plaintiffs are exposed, both Rockhill, as an entity, and Dan, as an individual, to liability in excess of $16 million dollars based upon ongoing enforcement of the arbitration award in and judgment entered in state court in Humboldt County, *Green Gate Services, LLC et al., v. Dan Koetting, et al.,* Humboldt County Superior Court Case No. CV190030.  Due to a great deal of post-arbitration litigation and appeals in California, the fees and costs incurred in attempting to mitigate Plaintiffs' damages are quite substantial, totaling over $1.5 million.

4.      In or around January 2018, Plaintiff Rockhill engaged BABC to represent it in a dispute with an entity named Green Gate Services, LLC ("GGS"), a tribal lending entity owned by the Big Lagoon Rancheria, a federally recognized Native American tribe in Humboldt County, California.  The

2

**COMPLAINT**

dispute arose from a contractual relationship in which Rockhill and/or Dan acted as the executive director of GGS who offered consumer lending programs to the public.  Dan is the President of Rockhill.  This dispute ripened into an arbitration administered by the American Arbitration Association (the "Arbitration"), pursuant to a permissive arbitration provision in the relevant agreement between GGS and Rockhill.  During the course of the Arbitration, BABC undertook to represent Dan individually in addition to Rockhill. BABC also represented Dan Koetting's brother, Mark Koetting ("Mark") individually, and his company Redondo Management, LLC, ("Redondo") who had a similar contract with a related tribal entity, Clear Loan Solutions ("CLS"), which was also owned by Big Lagoon Rancheria.  Despite the joint legal representation that was provided by Defendants to Dan and Rockhill and to Mark and Redondo in the Arbitration, the business operations of Rockhill and Redondo were completely distinct from one another. Rockhill worked under contract with GGS, while Redondo worked under contract with CLS. CLS and GGS are sometimes referred to herein as the "TLEs," short for tribal lending entities.  BABC unwisely decided to consolidate the claims relating to Mark and Redondo with those of Dan and Rockhill in the Arbitration.

5.      Despite being licensed outside of California, Defendants practiced law in California for this engagement. The contracts with GGS and CLS provided for enforcement of an arbitration award in the United States District Court for the Northern District of California or Humboldt County Superior Court. The TLEs initiated the Arbitration in 2018 with a claim filed on or about January 8, 2018 with the California offices of the American Arbitration Association ("AAA").  It was clear from the outset that in addition to seeking recovery from alleged conduct of Rockhill, GGS also sought to hold Dan and a related company, Rivo Holdings, personally responsible. GGS identified Rockhill, Rivo and Dan as Respondents in their Demand for Arbitration, and requested a hearing to be held in Sacramento, California. Through BABC as its counsel, Rockhill asserted counterclaims against GGS, and Redondo asserted counterclaims against. CLS.  Defendants filed a demand for arbitration with the AAA in

3

**COMPLAINT**

California, also requesting that the Arbitration be venued in Sacramento, California.  In February 2018, Defendants agreed to mediate the dispute in California with a California-based mediator. In March 2018, Defendants through Defendant Smith personally met with Plaintiffs in California and attended mediation on behalf of Plaintiffs in San Francisco, California. During the Arbitration, Defendants, through Smith, traveled to San Diego, California to meet with Dan, and performed legal services in California. Other partners of BABC, through *pro hac vice* admission in March 2019, appeared at proceedings relating to enforcement of the Arbitration award in the Superior Court of the State of California in Humboldt County, and later appeared *pro hac vice* on behalf of Plaintiffs in the California Court of Appeal.

6.      Unfortunately for Rockhill and Dan, Defendants' services in the Arbitration fell far below the standard of care.   Rather than properly marshalling and analyzing the evidence and presenting the strengths and weaknesses of the case to Dan and Rockhill, Defendants instead rushed into a consolidated and expedited arbitration with insufficient preparation, minimal discovery, no depositions, no accounting, and no designation of experts.  Most critically, Defendants wholly underestimated the strength of GGS' claims while overestimating the value of Rockhill's defenses and counterclaims, leading to a one-sided, superficial, and disorganized presentation at the Arbitration which was held on September 10-12, 2018. Defendants failed to timely and properly object to evidence, and present the evidence necessary to defend against GGS' claims and preclude alter ego liability for Dan, leaving Rockhill subject to a multimillion-dollar adverse judgment, and Dan facing a multimillion-dollar award that has yet to be finalized and resulted in years of additional post-Arbitration legal proceedings in California.   The highly unfavorable result in the Arbitration, especially the inflated damages and alter ego liability for Dan, resulted directly from the myriad errors committed by Defendants. As revealed by the recent appellate decision, *JPV I L.P. v. Koetting*, 88 Cal.App.5th 172 (2023), Rockhill and Dan face a potential liability of over $11 million plus 5 years or more of accumulated interest, as a proximate result of the negligence of Defendants in connection with the Arbitration.   Judgment has been entered

**COMPLAINT**

against Rockhill and it is anticipated that judgment will be entered against Dan individually in or about September 2024 for an amount in excess of $16 million. But for Defendants' legal services and advice falling well below the standard of care, Rockhill and Dan would not be facing such liability arising from the Arbitration and would have avoided over $1.5 million dollars of post-arbitration attorney's fees, appeal bond expenses, loans, interest, and fees attempting to rectify Defendants' errors and avoid further liability.

## **PARTIES**

7.     Plaintiff ROCKHILL CONSULTING GROUP, LLC ("Rockhill") is a limited liability company duly organized and existing under the laws of the state of Delaware, at relevant times with its principal place of business at 1111 Sixth Avenue, San Diego, California 92101.

8.     Plaintiff DANIEL R. KOETTING ("Dan") is an individual residing in San Diego County, California.  Rockhill and Dan are referred to collectively where appropriate as "Plaintiffs."

9.     Plaintiffs are informed and believe and thereon allege that Defendant BRADLEY ARANT BOULT CUMMINGS LLP  ("BABC") is an Alabama limited liability partnership, doing business in, and regularly engaged in the practice of law.   BABC holds itself out on its website as a "national" law firm with 13 offices located in Alabama, Florida, Georgia, Mississippi, North Carolina, Tennessee, Texas, and the District of Columbia.  Several BABC attorneys are currently licensed in California and BABC routinely appears in both federal and state courts in California.

10.     Plaintiffs are informed and believe and thereon allege that Defendant S. DAVID SMITH ("Smith") is a resident of Houston, Texas, and an attorney licensed to practice law in the State of Texas, who formerly practiced law during the relevant time periods as a partner of BABC. Plaintiffs are informed and believe and thereon allege that Defendant Smith presently practices law in Houston, Texas.

11.     In doing the things herein alleged, Plaintiffs are informed and believe, and thereon allege,

that Defendants and all other BABC personnel who performed legal services for Plaintiffs, were acting within the scope of their relationship with Plaintiffs and their agency for and employment with Defendant BABC and with the full knowledge, consent, authority, ratification, and/or permission of the Defendant BABC.

12.   Plaintiffs are informed and believe, and thereon allege, that each Defendant is now, and at all times herein mentioned was, the agent, servant, employee, partner, associate, joint venturer, co-participant, and/or principal of or with each remaining Defendant and that each Defendant is now, and at all times herein mentioned was, acting within the scope of such relationship and with the full knowledge, consent, authority, ratification, and/or permission of each of the remaining Defendants.

## GENERAL ALLEGATIONS

### Background of the GGS-Rockhill Relationship

13.   In August 2013, Rockhill entered into a Consultant and Independent Contractor and Agreement (the "GGS Agreement") with Green Gate Services, LLC, ("GGS"), a tribal lending entity ("TLE") organized under the laws of the federally-recognized Indian Tribe, the Big Lagoon Rancheria ("BLR") to operate an online consumer lending program.  Dan was the President of Rockhill which was owned 50/50 with his business partner, Jairo Perez.

14.   This opportunity had been introduced to Dan by his brother Mark, who had already established a similar program through his separately owned company, Redondo Management LLC ("Redondo") with another TLE owned by BLR called Clear Loan Solutions ("CLS"), also to operate a separate online consumer lending program. CLS and GGS are separate entities, as are Rockhill and Redondo, and the consumer lending programs were administered separately as well.  The operations of Rockhill and GGS were completely separate and distinct from the operations of Redondo and CLS.

15.   Between 2013 and 2017, Rockhill received legal advice regarding the agreement with GGS from Jennifer Galloway, a Florida attorney, who Plaintiffs allege on information and belief was

6

**COMPLAINT**

then operating as a solo practitioner in the State of Florida through her professional association, Jennifer Galloway, P.A. ("Galloway"). Galloway negotiated and participated in drafting the GGS Agreement for Rockhill.  Plaintiffs allege on information and belief that GGS was also represented by counsel in negotiating the GGS Agreement.

16.    Plaintiffs allege on information and belief that the underlying purpose of the GGS Agreement was to create a consumer lending program qualified for sovereign immunity afforded to BLR.  Indian tribes, such as BLR, are allowed to do this via compliance with an "arm of the tribe" analysis which essentially requires the tribe to pass a tribal lending code, create a TLE wholly owned by the tribe, with the tribe to exercise some control over the TLE and establish a program to ensure compliance with the tribal lending code.

17.    Prior to the GGS Agreement, Dan had previously operated consumer lending platforms and brought to the relationship over a decade of experience, as well as consumer information and leads, which were then used to develop and expand the consumer lending business governed by the GGS Agreement.

18.    Under the GGS Agreement, Rockhill was designated as the executive director of GGS, managing the day-to-day operations of the consumer lending platform, including marketing, generating leads, underwriting, and loan servicing for and on behalf of GGS.  Rockhill arranged for the monies to fund the loan program through a related company. A third company, Rivo Holdings ("Rivo"),  provided the call center for Rockhill, handling customer support. GGS did little to directly service the loans. It had just a small dedicated staff for the loan program. GGS was supposed to build a call center on tribal land to service the loans, but never did so. Rockhill generated the leads and arranged for affiliates to put up the capital to finance loans made through the consumer lending platform. The GGS Agreement was silent as to which party would own the leads generated by Rockhill and the customer data related to those who took loans through the consumer lending platform.

7

**COMPLAINT**

19.     Plaintiffs allege on information and belief that GGS and BLR were charged with complying with the arm of the tribe requirements.  Under the Compensation Schedule for the GGS Agreement, GGS was to receive a payment of $5,000 per month as a minimum, or $15,000 per million dollars (or 1.5%) of active loan balances as of the last business day of each month, with the remainder of any sums collected from loan repayments and interest charges to be paid to Rockhill as compensation and reimbursement for salary, operating expenses, financing, costs, and third-party vendor contracts, etc.

20.     In 2017, the relationship between GGS and Rockhill became contentious. In Fall of 2017, GGS refused to renew Rockhill's license to operate the loan business so that Rockhill could not generate new loans. As the relationship deteriorated, Rockhill decided to wind down the loan portfolio.  On or about January 8, 2018, GGS terminated the GGS Agreement pursuant to a Notice of Breach, Default, Misrepresentation and Termination to Rockhill (the "Termination Letter').  GGS later terminated Rockhill's access to the bank and ACH accounts that Rockhill used to operate the loan program, despite the fact that the borrowed principal and a substantial portion of the loan proceeds belonged to Rockhill, not GGS. Notably, amongst other things, in the Termination Letter, GGS stated "Daniel Koetting in his individual capacity (Mr. Koetting") and his company, Rivo Holdings, LLC ("Rivo") have also always been considered to be, and have always been treated as, parties to the Agreement."  This was a clear indication from the outset that GGS would seek to hold Dan personally responsible for Rockhill's conduct.

**Rockhill Engages BABC to Represent It in the Dispute with BLR/GGS**

21.     In 2017 and through April 2018, Galloway advised Rockhill concerning the GGS Agreement and Rockhill's obligations under that agreement as the relationship with GGS deteriorated and the loan portfolio wound down. In early January 2018, Galloway referred Dan to BABC, emphatically recommending that Smith and BABC be engaged to represent Rockhill in the dispute with GGS.  On January 10, 2018, Smith, on behalf of BABC, sent an engagement agreement (the

"Engagement Agreement," attached hereto as Exhibit 1) to Dan "to represent your company (Rockhill Consulting Group LLC) in connection with the Big Lagoon litigation matter and on an on-going basis." In the Engagement Agreement, Smith held himself out as Board Certified in Consumer and Commercial Law. Beginning in January 2018, BABC and Smith, along with Galloway, advised Plaintiffs with respect to the dispute with GGS. Plaintiffs allege, on information and belief, that Galloway joined BABC as a partner or "counsel" in April or May 2018, such that BABC, Smith and Galloway worked together collectively in the representation of Plaintiffs throughout 2018 and part of 2019. Dan has been unable to locate a fully signed engagement agreement between Rockhill and BABC and despite Dan's request, BABC has not provided one.

22.    From the outset, BABC provided legal services not only to Rockhill, but to Dan personally and Rivo, in relation to the Arbitration in which GGS had named Dan personally. For example, on February 12, 2018, BABC worked on and sent Dan a draft motion, which it later filed, seeking to dismiss him personally as well as Rivo from the Arbitration. BABC also represented Redondo under a separate engagement agreement, and performed similar legal services for Mark because he was also named individually by CLS.

23.    Galloway also continued to provide legal services to Rockhill and Dan in relation to the Arbitration and transactional legal advice as well. Prior to joining BABC, neither BABC nor Galloway advised Dan that she was seeking employment with BABC, nor that her referral to BABC was motivated by the desire to seek or obtain employment with BABC.

24.    At the same time BABC represented Plaintiffs in the dispute with GGS, BABC also represented Mark and Redondo in the dispute with CLS. The Engagement Agreement that had been forwarded by BABC to Dan expressly stated that because Rockhill's and Redondo's interests are "aligned in the Big Lagoon matter, we do not believe representing both entities constitutes a conflict." To the extent a conflict did arise, BABC promised to "address the matter with you at the time, consistent

9

with our ethical obligations." At no time did BABC advise Plaintiffs of any actual or potential conflict of interest that could arise out of the joint representation of Dan, Rockhill, Mark and/or Redondo, and BABC did not get the Plaintiffs' informed written consent to represent all those parties, even though there were potential and possibly actual conflicts of interest.

### BABC Also Represents Rockhill and Dan in a Virginia Class Action

25.    In or about July 2018, a consumer class action lawsuit was filed against GGS, Rockhill and Dan in Virginia, relating to GGS loan transactions. That matter was entitled *Gillam et al. v. Dan Koetting et al.,* Civil Action No. 3:18cv00473-REP in the United States District Court, Eastern District of Virginia (the "Gillam Class Action."). BABC and Smith appeared in 2018 as co-counsel for Rockhill and Dan in the Gillam Class Action. Ultimately, Rockhill incurred several million dollars in fees and the cost of settling the Gillam Class Action on behalf of GGS, for which it was not reimbursed by GGS. BABC was involved in counseling Rockhill regarding its obligations, discovery and with respect to the terms of settlement in the Gillam Class Action. At no time did BABC advise Dan or Rockhill about its ability to seek or obtain reimbursement or an offset from GGS for those costs in connection with the dispute that was arbitrated with GGS, and/or the subsequent judgment.

### BABC Advises Rockhill Against Settlement and Rushes into an Expedited Arbitration

26.    The GGS Agreement contained a permissive arbitration clause, section 8(a)(ii), which provides that either party *"may"* refer disputes regarding their Agreement to arbitration, under the rules of the American Arbitration Association. This provision also required that enforcement of any arbitration award would occur in United Stated District Court for the Northern District of California, or if the federal court declined jurisdiction, in state court in Humboldt County. The provision was cited as the basis for the arbitrator's appointment when GGS and Rockhill (and CLS and Redondo) proceeded before the American Arbitration Association ("AAA"). Defendants did not advise Rockhill or Dan of

**COMPLAINT**

the risks and benefits of arbitration or whether it would be more advisable to pursue litigation as opposed to arbitration. Dan and Rockhill had virtually no prior experience with litigation or arbitration, and were reliant upon BABC to advise them in regards to those proceedings.

27.     Both GGS and Rockhill, as well as CLS and Redondo, filed arbitration demands with AAA. GGS filed its demand against Rockhill, Dan, and Rivo on or about January 8, 2018. Rockhill filed its demand against GGS on February 14, 2018. When BABC filed this demand for Rockhill, it specified Sacramento, California as the place of arbitration, and GGS did the same in its demand for arbitration. Redondo also filed its demand for arbitration with CLS on February 14, 2018, likewise specifying Sacramento, California as the place for arbitration. GGS filed its Statement of Claims, specifying the facts and claims against Rockhill, Dan and Rivo on March 20, 2018.   GGS' claims against Rockhill, Dan, and Rivo eventually[2] included breach of fiduciary duty, fraud, conversion/theft, misuse of consumer data (Gramm-Leach-Bliley Act), breach of contract, violation of the BLR Consumer Financial Services Regulatory Code, and alter ego asserting that Dan was the alter ego of Rockhill, Rivo, and another entity that was affiliated with Rockhill which provided capital to fund the consumer loan program.[3] Rivo was later dismissed from the Arbitration. Rockhill's claims against GGS included various breaches of the GGS Agreement and fraud.  AAA administered the Arbitration through its offices in San Francisco and Fresno, California, although the parties ultimately selected an arbitrator in Denver, CO, resulting in the Arbitration being held in that locale.

28.     The GGS Agreement required that the parties give notice of breach and then attempt to resolve the dispute within 30 days.   Plaintiffs allege on information and belief that the parties apparently

---

[2] GGS filed Amended Counterclaims in the Arbitration on or about June 1, 2018.

[3] This other entity was dismissed in the Final Award because it was not a party to the arbitration agreement.

**COMPLAINT**

understood that this required a pre-arbitration mediation.  Accordingly, the parties entered into a mediation agreement in late January 2018 and began scheduling the mediation with Thomas Gede, a Sacramento-based California attorney with experience in Indian affairs.  The parties participated in mediation held in San Francisco on March 22, 2018.  Defendant Smith and Galloway travelled to and attended the mediation in San Francisco.  The parties did not reach a settlement at the mediation. On April 13, 2018, the mediator sent a mediator's proposal to resolve their dispute. Based on advice from BABC, Smith and Galloway, Plaintiffs did not accept the mediator's proposal.  BABC assured Rockhill and Dan that Rockhill's affirmative claims against GGS were very strong and that they faced little risk of an adverse result on GGS' counterclaims.

29.     Plaintiffs allege on information and belief that during this three-month frame, January through March 2018, BABC essentially did nothing to advance the Arbitration other than draft the arbitration claim and prepare for mediation, which did not include reviewing Rockhill's documents or interviewing witnesses or otherwise marshalling or analyzing material evidence.

30.      Following the unsuccessful mediation, the parties proceeded to select an arbitrator through the AAA.  The parties ultimately selected Gordon Netzorg, in Denver, Colorado, who was strongly recommended by Defendants. Plaintiffs are informed and believe and thereon allege that Defendants did not properly vet the arbitrator's background nor did they inform Plaintiffs of his prior affiliation with counsel for GGS. Plaintiffs were unaware that the arbitrator, Mr. Netzorg, had previously been co-counsel in a litigation matter with Robins Kaplan LLP, the law firm that represented GGS. Plaintiffs were also never informed that Mr. Netzorg's law firm had a practice that included representation of Indian tribes.

31.     The arbitrator held a Preliminary Hearing on May 7, 2018. Following that hearing, the arbitrator issued the Preliminary Hearing and Scheduling Order # 1 ("Order #1") that confirmed that BABC, on behalf of Rockhill and Dan, had agreed to the following:  consolidation of the action between

**COMPLAINT**

Redondo and CLS with the action between Rockhill and GGS and commencement of the Arbitration

hearing in Denver, Colorado on September 10-12, 2018 with a 2-day hearing estimate.

32.     Order #1 set an extremely expedited schedule, amongst other things, calling for Initial

Disclosures within 14 days of the Confidentiality Order, service of written discovery by June 4, 2018,

fact discovery cutoff on July 9, 2018, and service of initial expert reports by July 16, 2018.  Plaintiffs

allege on information and belief that BABC pushed for this expedited schedule with no consideration

whether this time frame allowed them adequate time to both obtain and review the evidence necessary to

support Rockhill's claims and the evidence necessary to controvert GGS' claims, including

identification and preparation of expert and percipient witnesses.  Order #1 also allowed up to 12 hours

of depositions for each side.  Order #1 explicitly stated that the Arbitration hearing was a "firm setting"

that would not be "changed or continued absent exceptional circumstances, upon a showing of good

cause," and that "All deadlines herein will be strictly enforced and adhered to in order to avoid

unnecessary delay and to ensure an expedient and fair resolution of this matter."  The arbitrator also

ordered that Rockhill, Dan, Redondo, Mark, and the other entities named by GGS and CLS be

denominated as "Claimants," and GGS and CLS as "Respondents."

33.     Plaintiffs allege on information and belief that Rockhill and Redondo should have

pursued separate arbitrations. The businesses of Rockhill and Redondo were operated separately. Their

lending operations were completely distinct from one another. By using the same counsel in a combined

arbitration, Rockhill and Redondo invited GGS and CLS to lump the companies together, resulting in

Rockhill and Dan being tarred with unfavorable facts as to Redondo and Mark. Rockhill operated a

larger loan program with GGS than Redondo and CLS, and BLR made much more money (roughly $3

million over the term of the agreement) on the GGS Agreement, compared with the Redondo contract.

The evidence of breach was different as to Rockhill and Redondo. The alter ego evidence was also

different as between Dan and Rockhill, as opposed to his brother Mark and Redondo. BABC negligently

and carelessly agreed to have the two arbitrations consolidated. BABC also utterly failed to disclose the conflicts arising out of this joint representation or advise Plaintiffs regarding the risks of lumping the separate operations of Rockhill together in the same proceeding with Redondo. Dan and Rockhill were simply given no advice concerning the pros and cons of consolidated arbitration with Redondo and Mark.

### BABC Loses a Motion Exposing Dan to Personal Liability

34. Following the preliminary hearing, the parties engaged in discovery. Plaintiffs allege on information and belief that during this period, Smith repeatedly reassured Dan that the case was headed in a "positive direction" and negative information emerging in discovery, would be put in the "proper context."

35. On May 18, 2018, BABC filed a Motion Relating to Joinder of Parties (the "Motion re Joinder") seeking to dismiss Dan and Rivo, as well as Mark, from the Arbitration on the grounds that they were not parties to the GGS and CLS agreements, and had not agreed to arbitration. Plaintiffs allege on information and belief that it was especially important to preclude personal liability for Dan because, while Rockhill was a single purpose entity that would be virtually judgment proof since GGS had terminated Rockhill's contract, Dan had substantial personal assets and other income that could be reached if GGS prevailed on its claims and he was deemed an alter ego of Rockhill.

36. Despite the critical importance of avoiding personal liability for Dan, Plaintiffs allege on information and belief that BABC performed far below the standard of care in preparing this Motion re Joinder. As to the alter ego issues, BABC provided no supporting evidence in the form of documents or declarations to refute the argument that Dan was an alter ego of Rockhill.

37. In contrast, in their opposition to the Motion re Joinder, GGS made a detailed alter ego showing supported by over a dozen exhibits and a declaration from GGS' representative. GGS also offered evidence to support that Dan personally and directly caused the breaches and violations

**COMPLAINT**

identified by GGS, including Dan setting up a company named "Green Gate Service LLC" (one letter off from GGS' name), and then opening an account for that entity into which payments from GGS customers were deposited.

38.     Although Rockhill had been a signatory on bank accounts in GGS' name, into which the proceeds of loan repayments were deposited, in March 2018, GGS removed Rockhill from those bank accounts, and seized as much as $1.3 million in funds belonging to Rockhill as compensation and reimbursement under the GGS Agreement. In response to that seizure, Plaintiffs consulted with BABC regarding actions it could take to protect its interests in further payments collected through the loan program. Plaintiffs allege on information and belief that Dan consulted with BABC concerning the creation of the new Green Gate Service account and whether it was legally proper.  Defendant Smith advised Dan, at or around the creation date of this account, that because the TLEs were engaged in "economic warfare" that justified the proposed course of action regarding using the name of Green Gate Service, and Rockhill could do what it needed to do including opening that account to protect its interests.

39.     As GGS zeroed in on this conduct as an example of Dan's purported dishonest and fraudulent business practices, Plaintiffs allege on information and belief that BABC downplayed the effect of these activities assuring that this would all be put in the "proper context" at the Arbitration hearing. Plaintiffs allege on information and belief that the creation of Green Gate Service and the opening of the bank account for that entity to receive GGS customer payments, proved especially problematic for Rockhill and Dan, both in terms of direct and alter ego liability. BABC's careless and fateful legal advice about those actions was below the standard of care, and was an important factor in the disastrous results in the Arbitration and the later appeals.

40.     Ultimately, the arbitrator ruled on the Motion for Joinder dismissing Rivo from the Arbitration, but allowed the Arbitration to proceed with Dan and his brother Mark as individual parties

**COMPLAINT**

despite that they were not parties to the GGS and CLS agreements and had never signed an agreement to arbitrate disputes. Because Dan was not a signatory to the arbitration agreement, the arbitrability of the claims against him should have been decided solely by a court of law, not an arbitrator.    Plaintiffs allege on information and belief that the arbitrator's ruling was ominous regarding the potential for personal liability for the Koettings.  The ruling stated:

> "Respondents have alleged conduct relating to each of the Koettings which, if proven, would put into question (1) the adequacy of the capitalization of Redondo Management LLC and Rockhill Consulting Group LLC; (2) whether the dominant members of such LLCs improperly diverted corporate funds; and (3) whether such LLCs simply functioned as facades for their dominant members. In addition, Respondents have made allegations relating to the potential misconduct of Mark Koetting and Daniel Koetting. It appears to the Arbitrator that the alleged conduct of each of the Koettings individually is so intertwined with the Amended and Restated Consultant and Independent Contractor Agreement, and the Consultant and Independent Contractor Agreement, both dated August 30, 2013 (the "August 30, 2013 Agreements"), that the Koettings are estopped from objecting to being parties to the consolidated arbitration."

41.    However, despite this critical negative language in the arbitrator's ruling on the Motion for Joinder, Defendant Smith misconstrued the import of this ruling and carelessly offered advice to Dan that downplayed its potential adverse consequences, amongst other things incorrectly telling Dan that the ruling imposed a "high standard" on GGS to prove alter ego liability.

### BABC Fails to Marshal Evidence and Properly Prepare for Arbitration

42.    Plaintiffs allege on information and belief that BABC waited until late in the game to initiate discovery.  With the Arbitration scheduled for September 10, 2018, BABC did not serve interrogatories until July 9, 2018 and documents requests until on or around July 11, 2018.  This left no time for follow up discovery.  Further, BABC routinely waited until the last minute to request

**COMPLAINT**

information and documents which Plaintiffs allege on information and belief did not allow BABC time to review documents or responses for privilege or privacy.   BABC also made virtually no effort to locate, prepare, designate, or depose any experts despite the fact that the case involved complicated accounting and damage issues, and arm of the tribe analysis, the presentation of which would have benefitted greatly from expert testimony.  BABC also took no percipient witness depositions and thus entered the Arbitration hearing without knowing what evidence would be offered or what the witnesses for GGS and CLS would say.

43.    In August 2018, GGS and Rockhill, along with CLS and Redondo, discussed potential settlement.  While these settlement efforts unfolded, Smith informed Dan that BABC would "need some additional time to pull together information to be able to present our case. It is my recommend [sic] that we ask the arbitrator to move the hearing to November."   On August 21, 2018, just shy of three weeks before the Arbitration hearing was to start, BABC sent a request to the arbitrator to continue the hearing to November 2018.  In the request, BABC stated, "Based on the current state of discovery, it has become evident that this case is not ready for Arbitration in September.  In addition to the above, neither party has taken depositions, designated experts, etc."  It conceded: "At this point, it is just not possible to prepare this case for hearing in three weeks."

44.    On August 26, 2018, the arbitrator denied the motion for the continuance.  In his ruling, the arbitrator found that there was no good cause for a continuance, stating:

> While the parties agreed to limited depositions, the burden is on the parties to take those depositions. ***The failure to take depositions does not constitute good cause for a postponement***. Similarly, the parties have had several months to identify experts. None of the parties has sought an extension of time to identify experts. ***The failure of a party to identify experts for the hearing is a choice that party has made, and does not constitute good cause for a postponement***.

**COMPLAINT**

h.  Finally, the arbitrator finds that much of the compression of the time available for discovery has been caused by Claimants' own substantial delay in making timely disclosures. This is not a finding of wrongdoing, but *it is a determination that Claimants have caused much of the delay which they argue results in this case not being ready for arbitration in September*.

(emphasis added).

45.     On the same day the parties received the arbitrator's ruling denying the request for a continuance, Galloway, then an attorney with BABC, transmitted to Dan a settlement proposal from GGS and CLS, which amongst other things, proposed a payment of $2.5 million jointly from Rockhill, Redondo and the Koettings.  Plaintiffs allege on information and belief that BABC advised against acceptance of this offer or even making a counter-proposal.

**BABC's Hurried and Inadequate Preparation Leads to a Disastrous Presentation at the Hearing**

46.     The denial of the continuance left BABC with just two weeks to prepare for the hearing, without having taken a single deposition, in the absence of experts to present an accounting, damages or arm of the tribe analysis, and with no damage model.

47.     BABC spent only a few hours preparing the Koettings for testimony in a case where GGS was seeking more than $10 million in damages.  Defendant Smith traveled to San Diego to conduct a short witness preparation meeting with Dan on September 5, 2018, spending insufficient time to prepare him just five days before the hearing.  Plaintiffs allege on information and belief that both Dan and Mark were disastrously unprepared to testify.  In the face of substantial claims and defenses to claims worth millions of dollars where their personal liability was at stake, Plaintiffs allege on information and belief that the Koettings had virtually no understanding of the questions they would be asked, and the best way to frame truthful responses.

**COMPLAINT**

48.     Plaintiffs allege on information and belief that BABC spent the vast majority of its briefing and arbitration presentation on Rockhill's and Redondo's claims against the TLEs and precious little on the defense of the TLE's claims against Rockhill, Redondo and the Koettings. Both in the briefing and at hearing, BABC made almost no effort to resist GGS' efforts to collapse Rockhill's and Redondo's alleged liability onto the Koettings personally.

49.     Plaintiffs allege on information and belief that this negligent presentation was compounded by the fact that Galloway, a critical witness who had negotiated the GGS Agreement on behalf of Rockhill, and continued to represent Rockhill as the relationship with GGS soured and then ended, refused to appear as a witness, citing stress.  Galloway was still their counsel, but Plaintiffs did not know that Galloway would not appear until the Arbitration hearing in Denver was about to commence. Despite her importance as a witness regarding the key agreement and the termination of the Rockhill/GGS relationship, as well as her reputed expertise on the law applicable to tribal lending, BABC failed to request a continuance, even when the arbitrator asked whether the hearing should be postponed due to Galloway's unavailability.  BABC and SMITH disclosed nothing regarding the conflict of interest between what was in the best interests of their clients versus the interests of one of their colleagues, Galloway. Over Dan's objection, BABC declined the arbitrator's suggestion to postpone the hearing. Without Galloway, the only witness offered to testify about the GGS Agreement was Dan, who had not been adequately prepared for that role.

50.     The Arbitration commenced on September 10, 2018 and finished on September 12, 2018. Galloway did not show up. Amongst other problems, Defendant Smith failed to make proper objections or conduct a competent cross-examination of witnesses.  Shawna Neyra, the vice chairwoman from BLR provided GGS' and CLS' damages presentation, and despite the lack of any foundation for her testimony and her lack of accounting expertise, BABC failed to object to either her testimony or the exhibit that GGS used to establish damages, which was inaccurate and lacking in foundation.  Ms. Neyra

took Rockhill's and Rivo's financial records, despite never having worked for those companies, and with no personal knowledge of their operations, and analyzed them to generate her own damages analysis. There had been no discovery on what the records represented, how they were generated and what they showed. Defendants offered no expert to counter Ms. Neyra's speculative damage conclusions drawn from those records at the Arbitration. BABC's failures to attack Neyra's testimony and analysis led directly to the inflated award of damages.

51.     Plaintiffs allege on information and belief that due to the absence of Galloway and the lack of proper and intensive preparation, Dan, arguably the most important witness for Rockhill, was not sufficiently familiar with many of the exhibits and the terms of the GGS Agreement, especially on cross-examination. The lack of preparation also hit especially hard on the cross-examination regarding the contacts with GGS customers in the winding down and post-termination periods.  Plaintiffs allege on information and belief that there were reasonable explanations for Rockhill's and Dan's activities, but rather than elicit these explanations in a coherent way on direct examination, Defendant Smith let Dan be decimated on cross-examination and declined any re-direct.  Smith also utterly failed to elicit testimony and available evidence to establish adherence to corporate formalities for Rockhill and the elements necessary to otherwise controvert the alter ego evidence presented by GGS.

52.     Plaintiffs allege on information and belief that Rockhill and Dan did not receive competent legal representation prior to or at the Arbitration hearing, for which BABC and Smith were poorly prepared, leading to a catastrophic result, which was also unexpected due to BABC's repeated assurances of a positive outcome.

**Arbitrator Finds Against Rockhill and Dan and Awards GGS ~$11 million plus interest**

53.     The Arbitration hearing concluded September 12, 2018.  Following the hearing, on September 28, 2018, upon invitation of the arbitrator, Rockhill, Redondo and the Koettings and the

TLEs filed post-hearing briefs.  Plaintiffs allege on information and belief that like its pre-hearing briefing and arbitration presentation, BABC's post-hearing briefing negligently and carelessly focused almost exclusively on Rockhill's and Redondo's claims, failed to sufficiently address the TLE's claims and virtually ignored the alter ego issues.   Critically, BABC also failed to controvert the TLE's damages figures which were speculative. lacking in foundation, and egregiously inflated.

54.     On October 29, 2018, the arbitrator issued an Interim Award.  The Interim Award found in favor of GGS (and CLS), denied all of Rockhill's and Redondo's claims, imposed alter ego liability on Dan as alter ego of Rockhill and Mark as alter ego of Redondo, and awarded damages to GGS in the amount of $10,968.794 jointly and severally against Rockhill and Dan, imposed prejudgment interest from May 31, 2018 and required additional funding of a Legal Defense Fund.  Plaintiffs allege on information and belief that the failure to object and counter Neyra's speculative and unfounded testimony proved especially disastrous as the arbitrator relied almost entirely on Neyra's conclusions and the one exhibit in awarding grossly excessive damages far beyond that to which GGS was contractually entitled.   Among other things, the arbitrator awarded a substantial portion of the loan portfolio and the principal amount of those loans to GGS when GGS had not provided the capital for those loans and did not repay it. Not only did Plaintiffs lose any right to affirmative recovery, they faced the highly inflated damage amounts determined by the arbitrator, and Rockhill's principals and affiliates were stuck with the cost of repaying the borrowed funds that provided the funding for the loan program.

55.     Plaintiffs allege on information and belief that even assuming GGS should have prevailed on its claims, which it should not have, had BABC competently defended the Arbitration, the arbitrator's Interim Award and Final Award vastly overcompensated GGS.  The awarded damages vastly exceeded what GGS was entitled to recover based on any contract or tort claims relating to the GGS Agreement, and failed to credit against the Award any of the amounts that GGS seized from the operating and ACH accounts. The vast majority of the money in GGS' accounts managed by Rockhill belonged to Rockhill,

not GGS, which was entitled under the GGS Agreement only to receive compensation of 1.5% of the monthly loan balances, subject to a minimum and maximum, for its participation in the program. BABC's failure to designate a damages expert and competently controvert GGS's damage analysis led the arbitrator to an award based on a highly inflated calculation that awarded GGS over $9 million more than that to which it was entitled based on the relevant contracts.  Despite additional briefing requested by the arbitrator after the Interim Award, BABC failed to address these huge issues in the Interim Award.  The arbitrator issued the Final Award on December 26, 2018 virtually unchanged from the Interim Award.

56.     The Final Award failed to credit the unrecovered principal amounts Rockhill had arranged for the loan program without which there would have been no loans made, and failed to offset or even take into consideration Rockhill's cost of defending and settling the Gillam Class Action in Virginia, which cost millions of dollars, because Defendants failed to make those arguments and present that evidence.

57.     Following the Final Award, BABC finally attempted to address the problems in the damage award via a Motion for Modification filed on January 11, 2019 supported by report an expert (retained after the hearing) calculating GGS' damages at $1.6-1.7 million (not the $10.68 million that had been awarded).  This belated expert-supported evidence should have been presented *during* the Arbitration. However, the arbitrator summarily denied the motion since it sought a "redetermination of the merits . . . based on additional evidence and substantive arguments," not correction of "clerical, typographical, or computational errors" allowed to be addressed by such motions under AAA Rules.

**GGS Petitions to Confirm the Arbitration Award in State Court and Appeals Ensue**

58.     On January 10, 2019, GGS filed a Petition to Confirm the Arbitration Award in the Humboldt County Superior Court in a case entitled *Green Gate Services, LLC et al., v. Dan Koetting, et al.,* Humboldt County Superior Court Case No. CV190030 (the "State Court Action").  BABC appeared

22

*pro hac vice* in the State Court Action for Rockhill, Redondo and the Koettings and appeared at least for one hearing to present oral argument in the State Court Action.  A local firm, Mitchell Brisso Delaney & Vrieze LLP in Eureka, California served as local counsel working with BABC as legal counsel in the State Court Action. The fee agreement by which the Mitchell Brisso Delaney & Vrieze firm was retained expressly provided they were working in association with and under the direction of BABC.

59.     Initial attempts in the State Court Action to get the Koettings dismissed and avoid personal liability as alter egos were unsuccessful.  The court entered judgment on July 11, 2019, tracking the damages awarded in the Arbitration Award against Rockhill and Dan in the amount of $10,969,794, against Redondo and Mark in the amount of $3,159,443, and also, against Dan, Mark, Rockhill and Redondo, jointly and severally in the amount of $193,822.50 for the Legal Defense Fund, all plus interest from May 31, 2018 forward, plus costs (the "Judgment").

60.     On September 13, 2019, Rockhill, Redondo and the Koettings appealed the Judgment in the State Court Action. Defendant BABC appeared in the notice of appeal. Dan posted an appeal bond of $16,743,924.80, which was obtained at substantial risk and expense, to avoid judgment enforcement against him while the appeal was pending. After full briefing and oral argument, on December 4, 2020, the Court of Appeal directed the trial court to set aside the ruling denying the Petition to Vacate and granting the Petition to Confirm and enter an order granting the Petition to Vacate as to both Dan and Mark and grant the petition to confirm only as to Rockhill and Redondo.  The opinion also concluded that the amount of damages, which after the opinion rested solely against Rockhill and Redondo, was not in excess of the Arbitrator's authority. The respite for Dan relieving him through this appellate decision from multimillion dollar liability was short-lived and the appellate opinion did not relieve Rockhill from the consequences of BABC's negligence during the Arbitration and as to the inflated damage calculation.

**COMPLAINT**

61.     Plaintiffs allege on information and belief that while the appeal was pending GGS assigned its right, title and interest in the Judgment to another entity called JPV I, L.P. ("JPV").  After remittitur, in February 2021, GGS moved to amend the Judgment to add the Koettings individually, and Rivo, as judgment debtors. JPV eventually substituted into the State Court Action as the judgment creditor. The Motion to Amend contended that the court could amend the Judgment under CCP § 187 because the Koettings and Rivo had control of and were represented at the Arbitration, there was a unity of interest and no separate personalities of entity and individual exist and it would be inequitable if acts of the entities were not attributed to the Koettings and Rivo.     The Opposition to that motion, now handled by new counsel for Dan, included fulsome declarations from Dan and Rivo's CFO presenting evidence of the capitalization of Rockhill, the lack of personal use of assets, proper accounting of payments and compliance with LLC formalities, and information relevant to defeating the alter ego claims.   Although this critical evidence was readily available, it had not been clearly presented by BABC before or during the Arbitration.    On July 23, 2021, the trial court denied JPV's motion to amend, finding that JPV did not carry its burden to supply sufficient evidence to support an alter ego finding against Dan. Plaintiffs allege on information and belief that the court considered the evidence submitted by Dan in opposition to the motion to amend, which was a far more comprehensive showing to negate the alter ego factors presented by GGS at the Arbitration.  Based on this showing, as opposed to the poor and incompetent presentation made by BABC at the Arbitration, the superior court found that:

> "[T]here was insufficient evidence that use of the LLC form of operating with limited liability was a sham, in bad faith, or intended to defraud Petitioners.  The court finds that there is no inequitable result to Petitioners by honoring the separate existence of the LLCs from its members.  The court finds that the evidence is insufficient to add Mark Koetting or Dan Koetting as judgment debtors on an alter ego basis or on an equitable basis."

**COMPLAINT**

62.     In September 2021, JPV again took the matter up on appeal, challenging the superior court's ruling denying leave to amend. On February 7, 2023, the Court of Appeal, in a published opinion, reversed the trial court order denying the motion to amend and remanded with directions to vacate the order and conduct further proceedings on JPV's motion to amend consistent with the appellate opinion. *JPV I L.P. v. Koetting*, 88 Cal. App. 5th 172 (2023). In that opinion, the Court of Appeal found that the trial court abused its discretion by "disregarding the collateral estoppel effect of the arbitrator's findings" underlying the Judgment against GGS (and CLS), and failed to consider "the arbitral findings that the LLCs wrongfully diverted the TLE's customers and business opportunities to other entities controlled by the Koettings." The Court of Appeal found that Dan could not use the evidence presented to the superior court to contradict the liability findings as to Rockhill. The Court of Appeal highlighted certain evidence that it thought warranted fresh consideration by the superior court and that "the Koettings were not permitted to relitigate the arbitral findings."

63.     The State Court Action was remanded to the trial court which, in April 2024, granted JPV's motion to amend based upon the factors described by the Court of Appeal in its 2023 opinion. Based upon that ruling, Plaintiffs anticipate that judgment will be entered against Dan individually in September 2024. The original Judgment remains in place as to Rockhill.

**Rockhill and Dan Would Have Obtained a Better Result Absent BABC's Negligence**

64.     Plaintiffs allege on information and belief that had BABC properly evaluated the strength of Rockhill's claims and the risk of losing to GGS' claims, and competently advised Dan, Dan would have settled with GGS on behalf of Rockhill on the terms offered in August 2018 which would have avoided the adverse result at the Arbitration and all the resulting fees and costs. Alternatively, Plaintiffs allege on information and belief that had BABC adequately prepared for the Arbitration, including conducting sufficient discovery, taking depositions, designating experts and making a competent presentation at the Arbitration, Rockhill would have prevailed at the Arbitration on its claims and

**COMPLAINT**

Rockhill and Dan would have successfully defended against GGS' claims. At the very least, absent BABC's negligence the damages awarded against Rockhill would have been as much as $9 million less, as well as avoiding years of accrued interest thereon, and the arbitrator would not have imposed alter ego liability upon Dan for Rockhill's liability. Further, Plaintiffs allege on information and belief that BABC's negligence has also cost Dan substantial amounts in excess of $1.5 million in efforts to mitigate the damages, attorney's fees and other costs in the State Court Action, the bond, and the appeals.

65.     Plaintiffs allege on information and belief that as a proximate result of BABC's wrongful conduct herein alleged, Plaintiffs face liability in excess of $16 million and have paid or incurred over $1.5 million in fees and costs. But for the wrongful conduct of Defendants herein alleged, Plaintiffs would have obtained a better result in the dispute with GGS and in the Arbitration and State Court Action.

66.     Plaintiffs allege on information and belief that BABC's services in the Arbitration were of little to no value and BABC should also disgorge its fees paid by Plaintiffs to BABC.

**BABC Represented Plaintiffs Through At Least October 2019**

67.     Through September 2019, BABC continued to represent Rockhill and Dan (as well as Redondo and Mark) in connection with the arbitration award, and the State Court Action, and related appellate proceedings. BABC handled the Cross-Petition to Vacate the Arbitration Award, as well as the Motions to Dismiss and the Motion to Vacate, and the opposition to the Motion for Attorney's Fees prepared in September 2019. In the State Court Action, Defendants continued to represent Plaintiffs through at least September 27, 2019. Defendants BABC and SMITH, and Plaintiffs Rockhill and Dan entered into tolling agreements effective as of August 24, 2020 to toll the applicable statute of limitations for the claims asserted herein. Said tolling agreements have been extended, tolling the statute of limitations through August 30, 2024.

**COMPLAINT**

## **FIRST CLAIM FOR RELIEF**

*(For Professional Negligence - Legal Malpractice against All Defendants)*

68.     Plaintiffs re-allege and incorporate by reference the allegations made in paragraphs 1 through 67 of this complaint, as if fully stated herein.

69.     Defendants, and each of them, owed a duty of care to Plaintiffs, including the obligations of full and fair disclosure, utmost candor, and the duty to use and possess such knowledge, ordinary care and skill, prudence, and diligence as is commonly used and possessed by other attorneys in the community and under like circumstances.

70.     Defendants breached their duty of care to Plaintiffs by performing below the standard of care applicable to attorneys in at least the following ways:

- Agreeing to consolidate and consolidating the claims of Dan and Rockhill with Mark and Redondo in the Arbitration;

- Pushing for an expedited arbitration in an unreasonably short time frame that did not allow BABC to gather and review the evidence necessary and adequately prepare for an arbitration with millions of dollars at stake for both sides;

- Failing to devote the necessary resources and time to adequately prepare for the Arbitration hearing on an expedited basis;

- Not conducting necessary and timely discovery, including taking depositions of percipient witnesses;

- Neglecting to designate and utilize experts, include experts on damages, accounting, and arm of the tribe analysis;

- Failing to evaluate and advise Plaintiffs concerning the risks and relative strength of GGS' claims, and instead repeatedly advising Plaintiffs of the likelihood of a positive outcome;

**COMPLAINT**

- Advising Plaintiffs to reject settlement offers from the TLEs that would, if accepted, have avoided substantial liability and fees and costs;

- Failing to adequately prepare Dan to testify at the Arbitration hearing;

- Failing to create a proper record and present available evidence and argument to controvert GGS' alter ego claim seeking to impose personal liability on Dan;

- Allowing GGS to present testimony and evidence without objection relating to their damages and not making the presentation necessary to impeach GGS witnesses, challenge their credibility, present evidence necessary to contradict and limit damages to the amount allowed in the GGS Agreement;

- Allowing Galloway to avoid or evade her anticipated appearance as a witness and failing to request a continuance to allow Galloway to appear and testify at the Arbitration, and failing to disclose Defendants' conflict of interest with respect thereto;

- Failing to obtain and retain certified transcripts of the Arbitration proceedings;

- Making a disorganized, incompetent, and incomplete presentation at the Arbitration hearing;

- Failing to timely address GGS' improper calculation of damages and waiting until it was too late to do so effectively;

- Failing to seek or obtain a credit for the approximate $1.3 million that GGS confiscated from the bank accounts under Rockhill's control;

- Failing to seek or obtain credit for the unreimbursed principal amounts that comprised the working capital for the consumer loan program;

- Allowing GGS to seek an excessive measure of damages and failing to present sufficient evidence to accurately account for same; and

28

**COMPLAINT**

- Failing to counsel or advise Plaintiffs regarding obtaining a recovery or a set off for the fees and costs of settlement of the claims against GGS in the Gillam Class Action.

71. But for Defendants' negligence, Plaintiffs would have obtained a better outcome in the Arbitration and would not be facing a judgment in excess of $16 million or more, including interest, and would not have paid or incurred over $1.5 million in attorney's fees and costs attempting to mitigate the effects of Defendants' negligence.

72. As a proximate result of Defendants' negligence and the wrongful conduct herein alleged, Plaintiffs have suffered at least $17.5 million in damages, subject to proof at trial.

## SECOND CLAIM FOR RELIEF

### *(For Breach of Fiduciary Duty against All Defendants)*

73. Plaintiffs re-allege and incorporate by reference the allegations made in paragraphs 1 through 67, and 69 through 72, inclusive, of this complaint, as if fully stated herein.

74. As Plaintiffs' attorneys and fiduciaries, Defendants owed fiduciary duties to Plaintiffs of undivided service, integrity, diligence, candor, communication, full and fair disclosure, and utmost good faith.  Plaintiffs reposed trust and confidence in Defendants, as their legal counsel, and said Defendants were aware that Plaintiffs reposed such trust and confidence and were relying upon Defendants to protect their interests.

75. Pursuant to Rule 1-100(D)(2) of the former California Rules of Professional Conduct and Rule 8.5 of the current Rules of Professional Conduct by coming to California to undertake the representation herein alleged, and by acting as Plaintiffs' legal counsel as herein alleged, Defendants, and each of them, became subject to the California Rules of Professional Conduct, the State Bar Act, and the fiduciary obligations of lawyers toward their clients.  Defendants breached their fiduciary duties to Plaintiffs. Defendants' conduct fell below the applicable standards of professional conduct and violated their duties of loyalty, candor, and communication, as well as those duties established by

**COMPLAINT**

applicable provisions of the State Bar Act, the California Business and Professions Code, and the California Rules of Professional Conduct, including, without limitation, former rules 3-110, 3-310, 3-500, 3-700(D) of the California Rules of Professional Conduct, and rules 1.1, 1.4, 1.7 and 1.16(e)(1), of the Rules of Professional Conduct that became effective November 1, 2018, and other applicable rules and statutes.

76.     Amongst other things, Defendants breached their fiduciary duties in at least the following ways:

- Not providing competent and diligent representation;

- Not disclosing and obtaining Plaintiffs' informed written consent to Galloway's and BABC's conflict with respect to her seeking employment from BABC while recommending Plaintiffs retain BABC;

- Not disclosing and advising Plaintiffs with respect to potential problems in the GGS Agreement drafted by Galloway prior to her tenure at BABC and how that could affect Plaintiffs' claims and defenses in the Arbitration;

- Failing to disclose potential and actual conflicts of interest in jointly representing Rockhill and Dan and Redondo and Mark and in pursuing a consolidated Arbitration, and to seek and obtain Plaintiffs' informed written consent thereto;

- Failing to advise, consult with and communicate with Plaintiffs regarding foreseeable risks in the Arbitration, and the means by which Plaintiffs' objectives could be achieved, including but not limited to the funds expended in defense and settlement of the Gillam Class Action.

- Failing to advise, consult with and communicate with Plaintiffs regarding the risks and benefits of settlement, when the opportunity for reasonable settlement existed.

- Failing to deliver the entire client file upon Plaintiff's reasonable request therefor, and

30

concealing, and continuing to conceal to the present day, the content of the client file from Plaintiffs including but not limited to the internal communications among BABC personnel, research, memoranda, and work product to which the Plaintiffs are entitled.

77.     As a proximate result of the wrongful conduct alleged above, Plaintiffs have suffered at least $17.5 million in damages, subject to proof at trial.  The breaches alleged herein are a substantial factor in causing Plaintiffs' damages.

### THIRD CLAIM FOR RELIEF

*(For Breach of Contract against Defendant BABC)*

78.     Plaintiffs re-allege and incorporate by reference the allegations made in paragraphs 1 through 67, inclusive, of this complaint, as if fully stated herein.

79.     On or about January 10, 2018, Plaintiff Rockhill and Defendant BABC entered into the Engagement Agreement whereby BABC agreed to represent Rockhill "in connection with the Big Lagoon litigation matter and on an on-going basis."  Plaintiffs have been unable to locate a signed version of the Engagement Agreement but have possession of an unsigned version.  Despite requests, Defendants have never provided a signed copy of the Engagement Agreement.  To the extent there is no signed version of the Engagement Agreement, the Plaintiff Rockhill and Defendant BABC entered into an oral and/or implied agreement upon the terms stated in the potentially unsigned contract dated January 10, 2018, a copy of which is attached hereto as Exhibit 1.  Although the Engagement Agreement was addressed only to Rockhill, BABC also performed services for Dan under the Engagement Agreement.

80.     Pursuant to the Engagement Agreement, BABC defined the scope of the engagement as "regulatory, litigation and compliance advice and legal work arising out of your business operations."  The Engagement Agreement also stated: "If we undertake to represent you in other matters without specific terms of engagement, the terms of this letter will apply."

31

**COMPLAINT**

81.     In the Engagement Agreement, BABC stated that it was also representing Redondo Management, LLC in the Big Lagoon matter, but concluded that because Rockhill's and Redondo's interests are "aligned in the Big Lagoon matter, we do not believe representing both entities constitutes a conflict."  To the extent a conflict did arise, BABC promised to "address the matter with you at the time, consistent with our ethical obligations."

82.     Implied in the Engagement Agreement is the duty of Defendant BABC to perform its duties with the requisite skill and care.

83.     Amongst other things, Defendant BABC breached the Engagement Agreement by:

- Failing to perform the services required by the Engagement Agreement with the requisite skill and care;

- Failing to disclose the conflict of interest which arose between Rockhill and Redondo with regards to pursuing a consolidated Arbitration;

- Charging Plaintiff Rockhill for services performed for Redondo and Mark; and

- Charging Plaintiff Rockhill fees in excess of the value of the services rendered.

84.     Plaintiff Rockhill performed its obligations under the Engagement Agreement, including paying fees charged by Defendant BABC, until further performance was excused by Defendant BABC's breach of the Engagement Agreement.

85.     Due to Defendants' failure to competently advise and represent BABC in the Arbitration, the services performed by Defendant BABC were of little to no value and Rockhill's payments to Defendant BABC far exceeded the value of those services to Rockhill and Dan.

86.      As a proximate cause of Defendant BABC's breach of the Engagement Agreement, Plaintiff Rockhill has been damaged in an amount subject to proof, including the payment of fees to Defendant BABC that exceeded the reasonable value of the legal services rendered.

**COMPLAINT**

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all matters and issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment as follows:

## ON THE THIRD CLAIM FOR RELIEF

1.     All fees paid to Defendant BABC by Plaintiff Rockhill because Plaintiff Rockhill received no value for the services rendered under the Engagement Agreement.

## ON ALL CLAIMS FOR RELIEF

1.     For general, special, and consequential damages for Plaintiffs in the sum according to proof;

2.     For interest thereon, and prejudgment interest, at the legal rate;

3.     For Plaintiffs' costs and attorney's fees herein incurred, to the extent permitted by law;

4.     For such other and further relief as the Court deems proper.


DATED:  August 27, 2024                SALL SPENCER CALLAS & KRUEGER, ALC


                                                       */s/ Robert K. Sall*
                                      By:  _____
                                                       Robert K. Sall

                                      Attorneys for Plaintiffs

**COMPLAINT**